All right, we'll hear our first argument, the case of Saranchuk v. Lello. Mr. Katzok. Good morning, Your Honors. My name is Andrew Katzok. I represent the appellants in this case. I'd like to respectfully reserve two minutes for rebuttal. Granted. Thank you, Your Honor. In this case, Your Honors are well aware of the facts, but I'll just briefly go through them. The appellants, my clients, are former police officers employed by the Bureau of DuPont, Luzerne County, Pennsylvania. They were also members of a sanctioned union, the DuPont Bureau of Police Officer Association. Counsel, those facts we are familiar with, but let me ask you about one that has some import for the legal issues here, which is you seem to argue on appeal, or at least the thrust of your argument is that these officers were full-time officers. Yet the record reflects that some of them, for their entire period, worked 32 hours or less, while Saranchuk at some point worked 40, but at other points less than that. How is that a full-time officer? Initially, they were working 32 hours or more. We consider it full-time, but that changed when the bargaining agreement went into place. When the bargaining agreement went into place, they worked more hours than the 32 hours. They only initially started out at the 32 hours and were considered part-time. But once the agreement went into place, they became full-time and worked much more than 32 hours. When you say we consider it, are you looking to the terms of the collective bargaining agreement, or is there something in the Borough Code or the Tenure Act that you're pointing us to to define full-time employment? Yes, Your Honor. When the bargaining agreement went into place, that would constitute their working more hours and becoming full-time police officers. But the collective bargaining agreement has a definition of full-time and part-time, and it's defined as whether they're scheduled for 40 hours or less than 40 hours. Right. So working 32 hours or more than 32 hours but less than 40 hours is still part-time, right? According to the agreement, yes. Why are you fighting on this? Because your clients have rights as regular part-time officers under the CBA. Correct. So isn't that enough? They don't have to be full-time to have rights under the CBA. That's what I found as well, yes. Okay. And just to be clear, your client's property interest is under the CBA, not under state statute. Correct. Okay. So we're focused on the CBA. Regular part-time have the right not to be transferred, demoted, or suspended without just cause, correct? Correct. Okay. Let's assume for a minute that that constitutes a property right. Right. What process are they due? Well, they're due the process that in the event there were any type of termination proceedings, they would be afforded the procedural due process rights for a laudermill hearing, which they weren't afforded in this case when a couple of the officers were terminated and their hours were reduced after the collective bargaining agreement went into place. The borough took the action of holding that against them. Right. So when you say laudermill hearing, you're talking about a pre-deprivation hearing, correct? Yes. All right. But those cases involve tenured employees, people who are protected under state civil service laws or federal civil service laws or they're tenured faculty or people that look like tenured faculty like Perry V. Sinderman. Here we've got people who have no right to be on the schedule at all because they're part-timers and at every monthly council meeting they were advised that they had no guarantee of any hours, correct? They had no guarantee of any hours, but again, they were working 32 or more hours, but then their hours were drastically cut once the agreement went into place. It was held against them. Adverse action was taken against them in order to bust the union, to discourage the union and to discourage any other police officers that came in, new hires, from joining the union as well. So adverse action was taken against them after the collective bargaining agreement. Well, clearly adverse action was taken because their hours were reduced to nothing. Right. But we're trying to determine what process were they due in light of the fact that they had no vested right to any hours at all. Well, there was a grievance process, right, that allowed them to determine whether they were terminated for just cause. Why didn't they pursue that? Well, Officer Saranchak did file a grievance, but the union ignored that. I mean, the borough ignored that. They would not even schedule or entertain the grievance process because when Officer Saranchak became the chief of police, he was working probably in excess of 40 hours. When they weren't paying him as chief of police the wage for that, he filed a grievance, and the borough completely ignored it. They didn't even honor the grievance process. Well, they initially scheduled a louder-mouth hearing, right, and then it never went forward? Not on Saranchak. I think they did, but it never went forward. Out of all the four officers, I think they did have one louder-mouth hearing for Mishalik. That was the only one. The other 40 didn't have any louder-mouth hearings for. The others commenced arbitration, right, but never pursued it? Never pursued it, right. Why not? Well, I don't think that the borough was open to the arbitration. They fought them every step of the way. In fact, there were comments made, you know, the behavior that shocks the conscience is that every time they try to assert their rights under the contract, they were harassed, their hours were cut. There were comments made to them that, you know, if you continue on this behavior, you're all going to lose your jobs. I mean, the borough thwarted and precluded every effort that they made to file grievances and go forward with the process. Your point is that the grievance process is a post-deprivation process, and your argument is that they were entitled to a pre-deprivation process? Yes. Yes. Given, as Judge Hardiman pointed out, that even under the definition of regular part-time officers, that they're not guaranteed particular hours or particular days, so those hours could be reduced or enlarged, right, at the discretion of the borough. Yes. So how, then, does a reduction in hours constitute a termination or a suspension or demotion? It would still be a loss of a property right because these individuals have families. So if their dollars are being reduced, their salaries are also being reduced proportionately. So they're losing property rights money in order to support their families. But if we're looking to a contractually defined property right, the definition of part-time includes that their hours are not regular hours, right? That's what Judge Mannion hung his hat on, yes. So don't you need to argue to us that this is a constructive discharge or that they were demoted or this was otherwise being disciplined? Well, yes. The reduction of hours, I would presume, would be a demotion, would be a deprivation, would be, even if they weren't terminated, a loss of hours and a loss of benefits. So it would be a demotion with their loss of hours, yes. And were there particular officers who were actually terminated rather than had simply a reduction in hours? Zeranshik was terminated and I think Mishalik was terminated. Yarik was reduced to a couple of days every two weeks. And I thought Yarik was taken off the schedule by Murray's successor. At first he wasn't, but then later on he was. Yarik had the least harsh treatment, but Zeranshik and Mishalik were terminated, and Kwiatkowski was down to, I think, one day a week. And how do we know that Mishalik and Zeranshik were actually terminated as opposed to just taken off the schedule? They had to hand their badges in and their equipment. And Yarik and Kwiatkowski didn't have to hand their badges in? Correct. That's right. Their hours were just drastically reduced. But they're not working there now, right? No. So did they ever turn their badges in? Well, I'm sure they did eventually. Yeah, I think they probably did later on. But when we filed the lawsuit, they were still working. The last two, Kwiatkowski and Yarik, but not Zeranshik and Mishalik. They were actually terminated. Zeranshik never got a laudable hearing. Mishalik got a quasi-laudable hearing. I was there. I guess you can call it a laudable hearing.  argued that they are full-time officers and you haven't characterized the action taken against them as a demotion or discipline or even a constructive discharge. Why aren't those forfeitures as to arguments that you would need to prevail on to prevail on the merits on appeal? Maybe I presume that the reduction of hours would constitute that without actually saying constructive discharge or demotion. But when their hours were drastically reduced, that's a presumption I made that there was a demotion. And that only happened after the collective bargaining agreement went into place. Before there was a union in place, everyone was happy, including the Bureau of DuPont. And, in fact, when discovery was done in this case, I deposed at least three, maybe four, to council members, and they said everything was fine with the police department, with these four individuals. They were doing a great job. Once they unionized, things drastically changed. Isn't a demotion a reduction in title? That's one interpretation, but it could also be a reduction in hours. It could be a reduction in benefits. Sometimes in corporate America, title doesn't necessarily change, but a person is demoted through a cut in salary. But they didn't have any benefits, right? No. And I guess reduction hours could be a demotion, but we're dealing with workers who had no right to a fixed amount of hours, right? The number of hours that they were assigned on a month-to-month or week-to-week basis was a matter of grace at the discretion of the council, I suppose, right? I would agree with you, Your Honor, yes. But I guess the argument is, why are they working a certain amount of hours then when the contract goes into place, two guys are fired and the other guys are down to one day a week, one guy's down to one day a week and the other guy's down to two days every two weeks? The timing is suspect. Right. But it would seem that the way to litigate the merits of that suspicious timing is to vigorously pursue the grievance process, but that never happened. It never happened. I guess you're saying the borough wouldn't participate? The borough wouldn't participate. But wasn't there some remedy that you had under the CBA to make the borough participate? Well, it never went that far. Two of them were terminated because it wasn't a long period of time. But after they're terminated, can't you pursue the grievance process? They probably could have, but they did not. Yes. They did not. They were labor lawyers, but, yes, they did not. They got on with their lives? They filed the lawsuit, right? They filed a lawsuit, and they had to get jobs. Several of them are police officers in other townships now, a couple in Luzerne County, and I think Saranchick is up in Lackawanna County, Musick is Lackawanna County, Scranton area. That's one of the sort of structural problems in Pennsylvania, right, with these small municipalities that have part-timers. They're sort of forced to try to work for two or three or four places at the same time. Right, that's right. And they don't get benefits. That's right. But here, unlike other communities, there was a sanctioned union that was in place and approved by the Commonwealth of Pennsylvania. And I think part of the borough's intent here was to break the union up, and they did. Any new hires that came in were told, you can't join the union unless you're not coming here. So the borough got what they want. The current officers are not under the CBA? I don't know. I don't know that. I don't know. After the lawsuit was filed, then, of course, I just litigated the lawsuit until summary judgment was granted. Okay. All right, Mr. Katzuck, we'll hear you on rebuttal. Thank you. Thank you. Mr. McMahon? Good morning, Your Honors. Will you please the court? My name is David McMahon from the McMahon Law Group, and I represent the defendant appellees, the borough of DuPont, the mayor, and several council members. Let me first frame the issue and then address some of the factual questions the court had. The question really is whether part-time hourly officers who understood and agreed to that at hire, who were reminded of that at each and every council meeting, and who the CBA specifically said there's no guarantee of any hours whatsoever, have a vested property right such as to pursue a constitutional claim. Well, they don't have a right in hours, but your client signed a contract saying that they had the right not to be suspended, demoted, or terminated except for just cause, correct? Correct. However, as the court has questioned Mr. Katzuck, they never availed themselves of the process for the procedural due process claim, which I think is the thrust of what the court's interest in. You need two things. You need a property right, I think, under the- Which they had under the contract. Well, I would disagree. I think under this- There's a lot of case law that says you can have a property right by contract. But the contract specifically, what they've contracted for, is no guarantee of any hours, is it? Right. Well, that's the contours of the right. The right didn't include hours, but the right includes not to be terminated except for just cause. That is a property right, is it not? Right. And if they felt they were terminated or not getting additional hours because of- without cause, the process, the process that's due them, is to pursue the collective bargain agreement process. So you're saying the post-deprivation grievance process was the exclusive process to which they were due? Correct, Your Honor. How does that comport with our case law? We've said in D, for example, with a collective bargain agreement in place, that except for extraordinary circumstances where there's some assertion of a legitimate government interest, that pre-deprivation process is required where someone is being deprived of their employment. So how does that- how does your argument comport with our case law? Well, the process due them is set forth in a collective bargain agreement. So if they felt- we're talking about procedural due process. And we have said that that constitutional process requires pre-deprivation process, notice- in the normal course, notice and hearing, unless there is some exigent circumstance that requires that be postponed. So of the four plaintiffs, the only one that was immediately removed from getting any hours- excuse me- was Saranchek. But in terms of timing, the contract was signed in 2008, and it was renewed for a second period. So there was no immediacy of the actions this plaintiff is trying to link. What the difference was, and what Saranchek was informed of in great detail, was through the district attorney's office of Luzerne County, sent a letter to both DuPont as well as the second department where Saranchek worked. That 17-page letter detailing at great length incompetence that she would not accept any charges filed. And as a result, he was informed by DuPont as well as the other department until the district attorney is willing to accept charges. An officer who can't file charges, who doesn't have the confidence of the district attorney, certainly can't function on any hours in a part-time or full-time capacity as an officer. So he was well aware of the process. And in fact, he started the steps of the grievance process. He testified and cited in the record that he was aware that was his remedy, that he pursued step one, he pursued step two, and at that point he stopped. And I asked him very specifically why he didn't pursue the third step, which he's entitled to do, and under case law he's required to do. And what he specifically said was because he had initiated the lawsuit in the meantime. He made a decision. All four plaintiffs made a decision which remedy to pursue. Aren't we addressing the question whether there's a property interest? The arguments you're making go to the adequacy of the process that was available or provided, and whether there was justification, for example, if there was actual misconduct, to postpone any process until after action had been taken. But the district court didn't reach that step of the due process analysis. It only addressed property interest. And if we're going to find that there was a property interest because they were part-time employees, and I haven't heard you explain to us why they are not under the agreement, wouldn't we need to remand for the district court to address the adequacy of the process? No, because as a matter of law, and there's two cases that are cited, I think both by the district court and in our brief, that if you don't pursue the process that you are due, namely what's under the CBA, you've waived that. The two cases, one's a middle district case. Well, you've waived that process, but you haven't waived your constitutional procedural due process. But there's no... Isn't the answer to Judge Krause's question that if the district court was wrong, that there is, in fact, a property right conferred by virtue of the collective bargaining agreement, then this court has to evaluate whether they got the process that they were due. Well, I respectfully disagree. I think there's two sources of a property right, right? Normally, under the constitutional setting, you'd have to look at the state law. Yeah, he's already said we're not dealing with state statutes. We're looking exclusively to the CBA. And the CBA sets forth exclusively what that procedural process... No, it's not consistent with the case law. The case law says that constitutional procedural due process is not automatically coextensive with the process enunciated in the contract. There are many, many cases that say that. I would agree, however, it also says you need to first exhaust your administrative remedies before you bring it to court. That's if you go through the grievance process. Which they started in a certain way. I think for purposes of this argument, you can assume we're with you on the grievance part of the case, but we're pressing you on the procedural due process of the case. And I hear you saying two different things that may be contradictory. I hear you saying that they're not entitled to a pre-deprivation hearing, correct? Correct. Okay, but yet you gave, according to Mr. Katzok, you gave Masiolik a Loudermill hearing, did you? For a separate later situation in that the borough, he availed himself of it. Well, but why would you give him a Loudermill hearing? A Loudermill hearing is synonymous with pre-deprivation process, correct? That hearing did not have to do with the reduction in hours. It had to do with subsequent series of events for which there was discipline. So it was not for the reduction. All right, but Saranchuk wasn't just reduced, he was terminated, right? Correct. So I think you're stuck with arguing for Saranchuk that sort of exigent circumstances type of argument. There are some cases where people are terminated or suspended sort of abruptly because of necessity. Some sort of protection of the public is required or the conduct is viewed as sufficiently severe as to warrant the precipitous action without a Loudermill hearing. Right. Is that your argument with respect to Saranchuk? Yes, Your Honor. It would also be the waiver argument, that he pursued the process but then stopped. Let me be clear on the sequence of the four. Saranchuk, we've spoken about at length. Kwiatkowski continued to get hours part-time, just less. And as the contract says, there's no guarantee of any hours, much less full-time. So your argument on him is he was never terminated or suspended or demoted, but he just sort of, his hours were reduced over time. He sort of died on the vine, so to speak, when it comes to being employed by the borough. Correct. Is that true of the other two as well? Michalik was, in fact, terminated subsequently for unrelated conduct, and it wasn't the change in administration where they brought a new outside police chief in to look at the department. The very first thing he's faced with is this 17-page letter from the district attorney, both with Saranchuk as well as Kwiatkowski and incompetence and deceitfulness, I believe is another word she used. The fourth officer is Yarek. Yarek continued to get hours. They just were reduced under the chief Murray, who took over in 2015, and further reduced under a subsequent chief of police. But they've argued as to those who were reduced hours, that equates to a constructive discharge. Again, the district court never addressed that because it concluded that they, as part-time officers, had no property interests whatsoever, and it appears that neither the parties nor the court recognize the language of the collective bargaining agreement that provides for a requirement of just cause for even demotions or other discipline. So with the reduction in hours, they've made an argument that what is reduced to zero constitutes termination, but there are a whole bunch of other adverse actions that are also laid out as parameters to a property right in the collective bargaining agreement, right? Correct. And the others where you're talking about incompetence or misconduct, isn't that what other discipline means? I mean, if their hours are being reduced, and your argument is their hours are being reduced because of misconduct, in other words, for disciplinary reasons, their hours are being reduced, that too seems to be within the parameters of the just cause requirement, and you may or may not be able to show that, and you may or may not be able to show that post-deprivation process was appropriate here. But none of this was addressed by the district court because it was only addressing the threshold property interest question, right? Well, the district court addressed the threshold property question as to under state law, so that's a De Forte analysis on the initial opinion. On reconsideration, the court then did have the collective bargaining agreement and found there was no property right in the first instance. The waiver argument, which we've made in response to the court's request for additional briefing on De Forte, which points out the difference between the Borough Act, the Borough Code and the Tenure Act. So I do think the district court did address it. I also think that the waiver argument, I think it was waived. But what was waived? Well, any rights to the extent- Statutory rights. Statutory rights. It didn't waive the contractual rights. Well, I don't think they had statutory rights because I think under both the Borough Code and the Tenure Act and the uncontested facts of the case, they weren't full-time officers who had a property right under state law. So then we turn to the collective bargaining agreement and arguendo if that affords property rights under the collective bargaining agreement for the procedural due process, what process were they due? Under the collective bargaining agreement, the district court didn't address the explicit language of the collective bargaining agreement that appears to provide a property interest to regular part-time officers, even defining them as those officers who don't have any guarantee of particular hours, yet nonetheless can't be demoted or otherwise disciplined without just cause. Doesn't the district court need- And you have not, even in your supplemental briefing, you don't seem to take issue with that language in the collective bargaining agreement imputing a property interest. Rather, you went directly to argue that post-deprivation process was adequate under the Constitution. Right. So do you concede, then, that for part-time officers under the language of the collective bargaining agreement, that there is a property interest? I don't concede anything. For argument's sake, if they have the right, they have to avail themselves of it, i.e., the process is set forth and they specifically made a decision, for whatever reason, to pursue litigation in court rather than pursue the arbitration process, which they are required to do under the contract if the contract applies to them. That takes us back to Schmidt and Dee. Our case law is clear that post-deprivation process, whether even available under collective bargaining agreement, is separate and apart from the constitutional pre-deprivation process that is required except in extraordinary circumstances. But I think the pre-deprivation only applies if somebody has a vested property right under state law. And that's the issue before us. Well, which they don't have. I think that's where the De Forte decision is posed to the Supreme Court. But that's the statutory right, you know, that doesn't address the contractual right. But I don't think the contractual right affords them constitutional protection. Well, I think there's a lot of case law that says otherwise. We can disagree about that. But I want to go back to the facts for a minute because anyone else besides Messiola get a Loudermill hearing? I don't believe any of the others did, no. Okay. Would you agree that Cerenchuk was terminated? I would agree he was, yes, whether it be constructive or in actuality. He did not get any further hours after that letter. It looks like that to me. That's why I asked it. But what about Yerrick and Kwiatkowski? Were they terminated or did they just sort of, you know, fade away with reduction in hours? Essentially fade away. What happens with part-time, and I'm a former officer myself, what happens with departments that have largely part-time officers is they fall into one of four categories. Either they're officers that are just out of the academy, that are trying to get experience and trying to get a full-time position. On the other extreme, they're retired officers, say from Philadelphia or Reading, who want to continue to supplement their income. There are officers, like in here, that just work at a bunch of different departments part-time while they have a full-time job. So Mr. Cerenchuk, for example, was an auto mechanic for his full-time job and then supplemented it by working part-time as an officer. Or category four would be officers who have their certification, they've gotten the Act 120 through the academy, but for whatever reason can't get employed full-time. They don't do well on the test, they don't pass the rigorous standards of departments that are looking for a full-time officer. So factually, that's kind of how part-time officers are hired or employed in Pennsylvania. Isn't this a really strange situation? It's unprecedented in my experience, but if you're doing these kind of cases, maybe you can point us to other ones. But there seems to me to be an internal contradiction here, because on the one hand, you're telling these folks, you're part-time, there's no guarantee you're going to get any hours at all. And on the other hand, you're telling them they have these vested contractual rights not to be terminated, suspended, or demoted except for just cause. Isn't there an inherent tension between those two? It's somewhat unusual. One of the other cases we discussed in the brief is a case out of Dixon City, which is ironically outside of Scranton as well, nearby. The Dixon City case, which we cite in the materials, is the Mariano case, actually middle district, and it was a similar hybrid where there appears to be a collective bargaining agreement. I would guess if I looked at it, it's probably the same kind of thing that was done here, that probably part-time officers kind of cut and pasted. And in that case, the middle district held that since they didn't appeal and avail themselves of the arbitration process, they waived their procedural due process claim. That was a middle district case, 2014. It was never appealed to the Third Circuit, so this Court is not weighting on it. But I agree that the CBA is kind of a weird hybrid because typically you don't have a CBA that would involve part-time and full-time. Most departments that have CBAs have full-time officers. My son is a police officer. He's covered by his CBA. Why this was created in 2008, I think if you read it in its entirety, it affords some balance between the borough's needs to discretionarily decide who they want to put on the street and who they don't, which officers they want to put out there more than others, which officers month by month they decide are put on the list to even be eligible for the hours. And it's counsel's decision, not the officer in charge's decision? The police chief recommends to the mayor who should be on the list, and just the Court's aware, this all began when a new chief was brought in. They were chiefless, for lack of a better word. Murray. They were chiefless for a period of time. The former chief had passed away, had health problems. Saranchak being the most senior officer, in effect became the officer in charge of the department. They bring Murray in, who was a retired state trooper, and right about that time is when they get this letter from the district attorney's office saying, your department's a mess, and the guy in charge is the biggest problem, Saranchak, and Klotakowski as well is a problem. He was tasked with figuring out who's competent, who isn't, who they want to put out on the street, who they don't, and as part of that process, some guys got more hours, some guys got less. New officers were brought in, the list was expanded, and so by pure definition, since they had more officers on the eligible list, everybody got less hours, and over time, as the chief figured out who's really competent, who would make the department proud, who would treat people properly, they get more hours, and the people that didn't got less. And are the current officers operating under the CBA? I believe they are, and I think we're probably two chiefs past where it was when this case began. There was another retired state trooper brought in to replace Murray, and I think there's yet another person in charge now. Part of the challenge... But to your knowledge, the CBA is still in effect? I believe it is, yes. I don't routinely represent DuPont, but I think... I don't know the... I can't answer yes or no. I would assume it is, but I don't know that. Okay, thank you, Mr. McMain. We'll hear rebuttal from Mr. Katzok. Thank you. And I'll be very brief. The only issue I wanted to address... I'm sorry. Can I jump in? I want to hear what you have to say, but I want to nail down who exactly got a louder mill hearing and who didn't. We know that Maciolik did. Anybody else? No. Okay. You heard Mr. McMain concede that Cerenchik was terminated. He argued that Yarek and Kwiatkowski were not terminated. I agree with that. I think the Cerenchik... They just sort of faded away, for lack of a better phrase? They reduced their hours into nothing. Reduced their hours to nothing. Exactly. They were forced to get other jobs constructively, but they weren't actually terminated. All right. Then if you're going to prevail on procedural due process with respect to Yarek and Kwiatkowski, we've got to agree with your argument that they suffered an adverse employment action under the CBA in the form of a demotion because their hours being reduced was a demotion. Right? Yes. Yes, Your Honor. Okay. You're not arguing that their hours being reduced to zero was a constructive discharge? Well, whether they were reduced to zero, I can't say for a fact they might have been reduced to one day a week, which would be a constructive discharge because then they had to look for employment elsewhere in order to make money. So it would be... Their hours were drastically reduced. Whether they were actually terminated like Cerenchik and Michalik were, no, they weren't. And I'm just going to be brief because I know I only have a minute. No, you take as much time as you need. We gave Mr. McMahon extra time, so we want to hear what you have to say. Thank you, Judge Waterman. The only thing I wanted to address was the 17-page letter from the district attorney. That was probably used as a basis to suspend and terminate Cerenchik, but most of the allegations in that letter were proven eventually to be unfounded. He was never charged with the crimes, the alleged crimes that they said he committed. There was the allegation that there was an FBI investigation, which never transpired. So most of those assertions and allegations in that letter proved to be unfounded eventually, and he was never charged with a crime. In fact, he's a police officer in another borough. So I wanted to bring that to the Court's attention because Attorney McMahon brought it up twice about this so-called 17-page letter from the district attorney. Can I just clarify in terms of the issues before us on appeal? Is it the case, as I think we heard you say earlier, you are no longer arguing that they have a property right under the statute or that there's a reason to await the default decision here? Right, it's just under the contract. Just on the collective bargaining agreement. And also in terms of the scope of the appeal, your notice of appeal addressed only the supplemental motion on summary judgment, which was limited to the issues of procedural due process and Monell. But your brief is addressing issues that were in a different order that also includes, for example, civil conspiracy and substantive due process. Are you limiting your appeal to just the procedural due process and Monell issues? Yes, I would say yes. Remember the procedural history of the case with Judge Mannion initially granted partial summary judgment and denied it. And then upon the motion for reconsideration, he asked for the collective bargaining agreement, which I think Attorney McMahon provided initially, but for some reason it wasn't with the record. So he electronically filed another copy of the agreement, and that's when Judge Mannion reviewed that and granted full summary judgment, which led, of course, to the appeal here. That's all I have. Okay, thank you very much. Thank you, Your Honor. We want to thank both counsel for the helpful arguments. We'll take the matter under review. Thank you, Your Honor.